MARY E. COLEMAN, Appellant, *v.* FRANK C. CLARK, Respondent.

Contract — "tourist parties" — when person engaged in managing "tourist parties," who engaged to look after baggage of tourist, not liable for baggage lost while in custody of steamship company upon whose ship the tourist was a passenger.

Plaintiff was a passenger on board a steamship under a contract with defendant who was engaged in managing tourist parties, by which "every detail, baggage, carriages, hotel rates, fees, everything pertaining to the tour from New York back to New York would be attended to." On arrival at plaintiff's destination a steamer steward took plaintiff's trunk from her stateroom and thereafter it could not be found. In this action, brought to recover damages for its loss, the court charged: "I leave to the jury the question of whether a substantial compliance with that contract required the service of a representative of the defendant upon the steamer." *Held*, error.

*Coleman* v. *Clark*, 135 App. Div. 55, affirmed.

(Argued June 13, 1911; decided October 3, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 13, 1909, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion of GRAY, J.

*Samuel H. Evins* and *J. O. Venino* for appellant.

*Alexander S. Bacon* for respondent.

HISCOCK, J. I find myself compelled to concur with Judge GRAY in an affirmance of the order appealed from but on grounds other than those stated by him.

I agree with him that actually the contract between the parties was a written one contained in the receipt or certificate issued by defendant to plaintiff and the prospectus or programme therein referred to as part thereof. Nevertheless, the court without any objection on the part of defendant's counsel allowed the jury, if it so desired, to find that the contract was an oral one made by the conversation between plaintiff and defendant's agent in New York before the written one was executed, and, therefore, plaintiff would be entitled, if she could, to sustain her recovery under either alleged contract. The so-called oral one did not materially differ from the written one in respect to the question here under discussion. Plaintiff testifies that " He (defendant's agent) told me every detail, baggage, carriages, hotel rates, fees, everything pertaining to the tour from New York back to New York would be attended to. I had nothing whatever to do with the details."

On the theory that it might find an oral contract, the jury were instructed that " then it was the duty of the defendant to substantially perform his contract, including the provision to look after and take care of the transportation of plaintiff's baggage, and it would be for the jury to say whether a substantial compliance with defendant's contract in that regard required the presence on the steamer *Romanic* of a representative of the defendant to look after and take charge of the plaintiff's baggage on the trip from New York to Naples, and whether the defendant did substantially comply with his contract in providing that the baggage should be handled

and looked after by the representatives of the steamship company, without any accompanying conductor between New York and Naples." I think the defendant's counsel intended to take exception to this portion of the charge, but through carelessness either in taking the exception or the printing of the record his exception, which is applicable only to this portion of the charge, is stated to be taken to the charge in connection with the written contract, where no such instructions as to the obligations of the defendant had thus far been given. However, in response to this exception, the court did then charge: "I leave to the jury the question of whether a substantial compliance with *that* contract required the services of a representative of the defendant upon the steamer. I grant you an exception to that." Therefore, when this was all over, there was an exception which was understood to refer to what had already been said with reference to the obligations of the defendant under the alleged oral contract or there were some new instructions subject to exception which referred to the written contract.

The defendant did not assume any such obligations as were defined by the court under either contract. Of course it could not have been the expectation of the parties either under the written contract or under the conversation between plaintiff and defendant's agent in New York that the defendant would send a representative to retain the custody of or maintain personal guard over baggage while it was in the possession of a public carrier under a regular passage ticket which had been issued to and accepted by the owner of the baggage. That would be absurd. What the contract meant, so far as applicable to the facts of this case, was that the defendant would furnish a representative who would discharge those duties and exercise that care concerning the baggage of plaintiff and those like her which an ordinary traveler would exercise concerning his own baggage. This

at most required him to see to it that baggage belonging to members of the party was correctly checked or labeled and delivered to the proper carrier and that it was carefully looked after on delivery by the carrier at the end of the route, or, in case of a failure to deliver at the proper time and place, that it was promptly hunted up and delivery secured. Certainly this obligation did not require the defendant to maintain a representative on the steamer for the entire voyage. · I do not think that it even required him to furnish a representative on board at Naples to stand by the baggage as it was being transferred from the steamer to the tender for delivery at the pier. It was still in the custody of the carrier and defendant had a right to assume in the first instance that the steamship company would properly discharge its obligations and so deliver the baggage. If this view is correct it was error for the court to charge as it did.

I do think, however, that the defendant by an agent was bound under the circumstances to attend at the pier and look after plaintiff's trunk if it was delivered there, or in case it was not delivered at the proper time with the other baggage to take prompt measures to look it up and see that it came off the steamer before the latter sailed away. And I further believe that certain aspects of the evidence would have justified the jury in finding that the defendant did not properly discharge this duty and in holding him responsible for the loss of plaintiff's trunk. It is not profitable to consider this question at length, for I concede that the court committed error in permitting the defendant to be charged with too great a responsibility in the respects mentioned. If the plaintiff's counsel had seen fit to go back and take a new trial under the decision of the Appellate Division this error might have been eliminated on a new trial, but as the case stands now, it is available to the defendant and must lead us to grant judgment absolute against the plaintiff on the stipulation of her attorney.

In accordance with these views I vote for an affirmance
of the order of reversal, with costs in all courts.

GRAY, J.    By this action, the plaintiff has sought to
hold the defendant responsible in damages for the loss of
a trunk and its contents.    The defendant was engaged in
the business of organizing and managing "tourist parties
from New York and other places to Europe, Africa, Asia
and other countries." In June, 1905, the plaintiff applied
to him for information about a trip to Europe and was
advised to become a member of a party, which was to
sail in July upon a tour, satisfactory to her in its route.
She was going alone and was assured that every detail
would be attended to, "baggage, carriages, hotel rates,
fees, everything pertaining to the tour." At this time,
she paid a deposit of $25 on account of the cost of mem-
bership in the party.    Some days later, she returned
to the defendant's office and paid the sum of $385, as the
balance due for the proposed tour.    She, then, was handed
a paper signed by the defendant; which acknowledged
the receipt of her money and expressed the terms and
conditions upon which she became a member of the party.
At the same time, she was given a ticket of the White
Star Line, entitling her to a first class passage from New
York to Naples on the steamship *Romanic.*    The party
sailed the next month for southern Europe and landed at
Naples, by means of a tender.    The plaintiff's trunk,
which had been in her stateroom, was taken out of it by
a steamer steward and was never seen again by her.

Inasmuch as the plaintiff elected to proceed as for a
breach of contract, it is necessary to refer to the written
receipt, which the plaintiff obtained upon paying her
money and which contained the defendant's undertaking
in consideration of its payment.    Whatever the prior
oral negotiations, they were merged in this writing and,
so far as material, it reads that the defendant had
received from the plaintiff "the sum of $410, being full

payment for Membership in Fourth Vacation Party sailing per steamer *Romanic* on July 6, 1905. This amount includes transportation, hotel accommodation and other items, as set forth in the printed programme, from New York 1905 to New York 1905. This certificate is issued subject to the conditions mentioned in the programme and to the provisions applying to the transportation of passengers, as set forth in the regulations of each of the transportation companies employed in the conveyance of passengers." . The printed programme, which is referred to and which must, of course, be considered in determining the legal relations entered into, after giving the date of the proposed sailing of a "select private party" in the *Romanic* to Naples, describes the territorial extent of the proposed tour; states its cost and the route, with a daily and descriptive itinerary, and what the sum paid will include, as to the nature and class of conveyances and accommodations and in the way of traveling expenses. It was stated in the programme that "a first class conductor, supplied by Clark's Tours, will accompany the party through Europe to look after the baggage and all details of the trip." Nothing else in the paper need be quoted as pertinent to the issue. The ticket, with which the plaintiff embarked upon the *Romanic*, was expressed in the usual form and with the regular conditions of steamship tickets. It embodied a valid contract between the White Star Line, or Oceanic Steam Navigation Company of Great Britain, and the plaintiff for the transportation of herself and of her personal effects from New York to Naples. When she embarked, she brought and delivered her trunk to the steamship and had it placed in her stateroom. It is not pretended that the defendant could have assumed any care of it as yet. According to the defendant's agreement, the plaintiff became subject to the regulations of the steamship company, which was to transport her. When she arrived at Naples, the steward of the steamship helped the plaintiff to

pack her trunk and took it from the statereom. The defendant's authorized representative, or "conductor," Hillier, met the party upon the steamship's arrival, and accompanied the members from the steamship upon the tender to the wharf. The hand baggage and the trunks were not sent ashore with the passengers, but came on separate tenders. On landing, Hillier informed the plaintiff that she might "go up with the party," and that he would "attend to the trunks," meaning at the custom house. After passing the customs, the passengers were sent on to a hotel and afterwards visited various objects of interest in the city. Upon returning to the hotel the plaintiff found her hand luggage; but her trunk was not there. Upon inquiry Hillier stated to her that he would send to the custom house and subsequently reported that he could not find it. It had not come ashore and the steamship had sailed for Genoa. Subsequent inquiries, and a correspondence with the White Star Line officials, failed to discover what had become of the trunk. The plaintiff continued on with the party upon the tour under Hillier's guidance.

It is difficult to understand the theory upon which the defendant can be made liable for the loss of the plaintiff's baggage. That the steamship company might be liable is fairly intelligible; as both passenger and baggage were in its care and by its contract were to be delivered at the place of destination. When and where did the defendant come under any responsibility for the safe transportation of the baggage? Certainly not until it came actually, or at least constructively, into his agent's care, and that could only be upon its delivery at Naples by the steamship company. There is no charge of any wrongful conduct on the part of the defendant, or of his agent; the claim is for an alleged breach of his contract. That contract, as we have seen, covers a receipt for the money and an agreement that it shall pay all the expenses as specified, and that a "first-class conductor will accompany the

party *through Europe to look after the baggage and all details of the trip.*" It is true that the plaintiff testified that, in a prior interview, the defendant's clerk had said that the members of the party would be "under the direct charge of a director" and that the plaintiff "would have no care whatever of herself in any personal way, or baggage, everything would be looked after. * * * on the voyage, on the trip." That was a representation; but what the defendant became bound to do was, subsequently, expressed in the writing given her. Then it was that she received the ticket, which entitled her to transportation to Europe on a vessel of the White Star Line, and with respect to that transportation the defendant neither assumed, nor could he assume, any responsibility beyond delivering a valid first-class ticket. At the end of the voyage, he, for the first, undertook and, indeed, became able to assume the care of plaintiff's baggage. Then this "personally conducted" party was to be taken through Europe by the defendant's representative and then he assumed all the obligations legally attendant upon the undertaking, as expressed in the receipt and "programme" he had delivered to the plaintiff. The basis of a liability to respond in damages for this plaintiff's loss must be found in some agreement, which the defendant failed to perform; or it does not exist at all. Such an agreement may, or may not, be in writing; but if it is, then, it becomes the best evidence of the final intentions of the parties and resort must be had to it to ascertain what the engagement is, which is in question. The defendant was not a common carrier and he could not come under a common carrier's liabilities. He had not insured the safe delivery of plaintiff's baggage in Europe. The trunk was never delivered to him; it was delivered to the steamship by the plaintiff and placed in her stateroom, upon embarking, and, prior to disembarking, the steamship company took possession of it through a steward of the vessel. When Hillier said to the plain-

tiff that he would "attend to the trunks," it was a promise, which carried as yet no liability, and none could commence, until the trunks, by delivery upon the dock at Naples, might be said to have come into his custody. For any loss, through theft or other cause, before such delivery, whatever liability existed for it, was that of the company.

There was no question of fact and the case should not have been submitted to the jury. Would a jury have the right to find the undertaking of the defendant to have been anything other than, for the sum named, to procure for the plaintiff a first-class steamship passage to the port named in Europe and to conduct her through Europe by a first-class conductor, who should assume the care of her baggage, when and as received, and should attend to all details of the tour? I think that was the extent of it, clearly, and, in my opinion, to hold that a jury might legally find that more was, actually and finally, contracted for, would be unreasonable.

The order should be affirmed and judgment absolute ordered against the appellant under her stipulation; with costs in all the courts to the respondent.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur with HISCOCK, J.; GRAY, J., also reads for affirmance, etc.

Order affirmed, etc.